UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

RYAN CRAIG BROWN                                                    PLAINTIFF

VERSUS                                          CIVIL ACTION NO. 3:19CV615-RPM

LT. ANDRE JONES et al                                             DEFENDANTS

## MEMORANDUM OPINION & ORDER

Plaintiff Ryan Craig Brown, proceeding *pro se* and *in forma pauperis*, filed a 42 U.S.C. §
1983 prisoner civil rights complaint alleging constitutional violations in connection with his
incarceration at the Madison County Detention Center (MCDC).  Specifically, Plaintiff alleges
(1) Defendants Andre Jones and Thomas Strait subjected him to excessive force; (2) Jones
verbally abused and threatened him; (3) Jones removed the television and shut off the telephone
for one week; (4) Plaintiff was not provided laundry services with sufficient frequency nor
provided cleaning supplies on a daily basis; (5) Plaintiff was not permitted to attend religious
services; and (6) Plaintiff received inadequate medical care.  Doc. [1].  In addition to Defendants
Jones and Strait, Plaintiff has sued Captain Brian Watson because he is the warden of MCDC.
Doc. [21] at 26-27.  He also sued Madison County because it owns the facility.  *Id.* at 27.
Defendants have filed a motion for partial summary judgment as to all of Plaintiff's claims,
except for the excessive force claims against Defendants Jones and Strait.  *See* Doc. [38] [39] at
7.  Plaintiff has not filed a response in opposition.

Plaintiff was booked into the Madison County Detention Center on September 25, 2018.
He currently is serving a 300-month federal prison term for armed robbery, possession of a
firearm during a violent crime, and Hobbs Act robbery.  Doc. [21] at 4.  At the time of the
incidents giving rise to his complaint, Plaintiff was housed at MCDC awaiting disposition of

additional federal charges for forcibly assaulting, resisting, imposing, impeding, or interfering with an officer.  *Ibid.*  Because of the nature of the charges against him, Plaintiff was placed in the special management unit at MCDC and classified as a "high-risk prisoner".  Doc. [21] at 10-11; Doc. [38-1].  Plaintiff was housed in a high-risk cell with two other inmates and not allowed contact with regular MCDC officers or other prisoners.  Doc. [38-1].

According to Plaintiff, on July 11, 2019, Lt. Andre Jones and Lt. Thomas Strait entered his unit and used excessive force, threatened him, and verbally abused him.  Doc. [1] at 4-5; Doc. [21] at 16-18.  Jones punched him in the back and placed a taser to the back of his head while threatening and verbally abusing him.  Strait then kicked Plaintiff in his side.  As a result of the incident, Plaintiff contends he suffered bruising and pain in his side, which lasted three or four weeks, and back pain lasting a week or two.  Doc. [21] at 19-20.  Following the incident, Defendants removed the television from the special management unit and shut off the telephone. *Id.* at 19.

## Law and Analysis

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010).  Where the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, all other contested issues of fact are rendered immaterial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Topalin v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).  In making its determinations of fact on a motion for summary judgment, the court must view the evidence submitted by the

parties in a light most favorable to the non-moving party.  *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of a material fact and the appropriateness of judgment as a matter of law to prevail on its motion.  *Union Planters Nat'l Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).  The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues.  *Topalian*, 954 F.2d at 1131.  "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]."  *John v. State of Louisiana*, 757 F.3d 698, 708 (5th Cir. 1985).  Once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence.  *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).

**<u>Verbal Abuse and Threats</u>**

Plaintiff contends that Defendant Jones verbally abused and threatened him.  In his complaint, he alleges that Defendant Jones put a taser to his head and threatened to mace and assault him if he banged on the tray slot again.  Doc. [1] at 5.  Defendant also allegedly verbally abused Plaintiff in a "sexual manner", by telling Plaintiff that if he "played pussy [he] would be fucked."  *Ibid.*  Plaintiff's allegations of abusive and threatening language do not rise to the level of a constitutional violation.  *See Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002) ("Claims of verbal abuse are not actionable under § 1983 ...").  As the Fifth Circuit has held, "[i]t is clear that verbal abuse by a prison guard does not give rise to a cause of action under § 1983."  *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (citing *Bender v. Brumley*, 1 F.3d 271,

274 n. 4 (5th Cir. 1993)).  Plaintiff's claim is without merit and should be dismissed with prejudice.

**Television and Telephone Privileges**

Plaintiff alleges that following the incident of July 11, 2019, Defendants removed the television from the special management unit and shut the telephone off for a week.  Plaintiff's claims are patently frivolous.  Plaintiff possesses no constitutional right to watch television in prison.  *See Scheanette v. Dretke*, 199 Fed.App'x 336, 337 (5th Cir. 2006) (concluding that "watching television is not a life necessity or a basic human need"); *Tucker v. Royce*, 2011 WL 541116, at *6 (N.D. Miss. Feb. 8, 2011).  Likewise, Plaintiff has no constitutional right to telephone privileges.  *See Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982); *see also Lewis v. Dretke*, 54 Fed. Appx. 795 (5th Cir.2002) (finding, *inter alia*, that a prisoner's loss of telephone privileges for 90 days did not implicate a protected liberty interest).  Plaintiff's claim is without merit and should be dismissed.

**Cleaning Supplies and Laundry**

Plaintiff also asserts an Eight Amendment claim alleging unconstitutional conditions of confinement at MCDC.  He contends that for a period of approximately ten months he did not receive daily cleaning supplies and did not receive laundry services as frequently as desired.  As a result, the unit often smelled and was dirty.  The Constitution does not require that inmates be housed in comfortable prisons; however, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded humane conditions of confinement and prison officials are to ensure that inmates receive adequate food, shelter, clothing, and medical care.  *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001); *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999); *see also Helling v. McKinney*, 509 U.S. 25, 36 (1993) (holding

that the inmate must show that the risk of which he complains is "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk").

In order to establish an Eighth Amendment violation regarding conditions of confinement, an inmate must establish (1) that the deprivation alleged was sufficiently serious, *i.e.* an official's act or omission must have resulted in the denial of "the minimal civilized measure of life's necessities"; and (2) that the prison official possessed a sufficiently culpable state of mind. *Herman*, 238 F.3d at 664. The required state of mind is one of deliberate indifference to inmate health or safety. *Id.* Deliberate indifference is established by showing that prison officials (1) were aware of facts from which an inference of excessive risk to the prisoner's health or safety could be drawn; and (2) that they actually drew an inference that such potential for harm existed. *Id.*

Title 42 U.S.C. § 1997e(e) provides that "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The Fifth Circuit, in interpreting this provision, has held that the phrase "physical injury" in § 1997e(e) means an injury that is more than *de minimis*, but need not be significant. *Alexander v. Tippah County, Miss.*, 351 F.3d 626 (5th Cir. 2003). Plaintiff does not allege any physical injury resulting from the conditions of confinement. Thus, he is limited to declaratory or injunctive relief. *See Harper*, 174 F.3d at 719; *see also Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005).

Although he did not receive cleaning supplies on a daily basis, Plaintiff testified that the frequency with which he received cleaning supplies varied. Doc. [21] at 23. "Sometimes we could go one or two weeks without getting cleaning supplies." *Ibid.* However, he testified that someone would bring cleaning supplies if Plaintiff requested them. *Id.* at 24. With respect to

laundry services, Plaintiff complained that sometimes he would go one or two weeks without having clean uniforms, underclothes, sheets, and blankets. *Id.* at 23. According to Plaintiff, clothing is washed two times per week throughout the jail; but his unit "would get skipped periodically. So sometimes we might miss a week. Sometimes we might miss two weeks." *Ibid.*

Based on the foregoing, the Court finds Plaintiff has failed to identify conditions of confinement that deprived him of "the minimal civilized measure of life's necessities." *See Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998). His desire for more frequent or more regular cleaning supplies and laundry service does not equate to an Eighth Amendment violation. *See Wilson v. Lynaugh*, 878 F.2d 846, 849 & n.5 (5th Cir. 1989) (noting that the Constitution does not protect prisoners from "discomfort and inconvenience" and that prisoners "cannot expect the amenities, conveniences, and services of a good hotel"); *Crawford v. Caddo Correctional Center*, 2015 WL 3622689 (W.D. La. June 9, 2015) (rejecting inmate claim that his Eighth Amendment rights were violated because he was distributed "dirty or contaminated" t-shirts, towels, underwear and socks finding that the "inconvenience" of dirty laundry was merely a *de minimis* imposition); *Crawford v. Epps*, 2014 WL 2048207, at *5 (N.D. Miss. May 19, 2014) (finding that inmate's dissatisfaction with prison laundry service did not state a constitutional claim). Based on the foregoing, the Court finds Plaintiff's claim should be dismissed with prejudice.

**Religious Services**

Plaintiff asserts he was unable to attend religious services, while female inmates were allowed such privilege. The Court construes Plaintiff's claim as falling under the First Amendment right to free exercise of religion. Prison walls do not strip a prisoner of his First

6

Amendment right to the free exercise of religion.  *See*, *e.g.*, *McFaul v. Valenzuela*, 684 F.3d 564, 571-72 (5th Cir. 2012) (quoting *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995)).  Nevertheless, a court accords "substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them."  *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (collecting cases).  Under the *Turner* analysis, "a prison regulation [that] impinges on inmates' constitutional rights . . . is valid if it is reasonably related to legitimate penological interests."  *Turner*, 482 U.S. at 89.

The *Turner* analysis turns on four factors. First, the Court considers whether a "valid, rational connection exists between the prison regulation and the legitimate governmental interest put forward to justify it".  *Brown v. Collier*, 929 F.3d 218, 232 (5th Cir. 2019) (quoting *Adkins v. Kaspar*, 393 F.3d 559, 564 (5th Cir. 2004)).  Second, the Court considers whether there are "alternative means of exercising the fundamental right that remain open to [the] prison inmate".  *Ibid.*  Third, the Court considers what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally".  *Ibid.*  Fourth, the Court must consider whether there is an "absence of ready alternatives" to the regulation in question.  *Ibid.*

Plaintiff makes only passing statements about his religious convictions and practices. Doc. [21] at 26.  At the screening hearing, he did not deny that he was able to practice religion while housed in the special management unit, but he merely wanted "the same opportunity to go, you know, to a church".  Doc. [21] at 25-26.  He conceded that the unavailability of religious services was a "security issue" based on his classification as a high-risk prisoner.  *Id.* at 26.  In fact, Plaintiff was housed in the special management unit because he was considered a violent

prisoner who needed to be separated from other prisoners. *Id.* at 10-11; Doc. [38-1]. Captain Watson explained that during part of Plaintiff's stay at MCDC, he was placed in a high-risk cell block with two other individuals and was not allowed contact with regular prison officers or other prisoners at any time. Doc. [38-1]. Based on the foregoing, Defendants have demonstrated under the *Turner* factors that the limitation placed on Plaintiff was reasonably related to a legitimate penological interest. Accordingly, his First Amendment claim fails.

**Inadequate Medical Care**

In a single sentence in his complaint, Plaintiff alleges that MCDC failed "to provide adequate medical treatment after [he] was assaulted". Doc. [1] at 6. At the screening hearing, Plaintiff admitted that the pain in his back and side resolved itself within a few weeks. Doc. [21] at 19-20. Plaintiff testified that right after the incident he went to the kiosk to fill out a medical request; however, a nurse was already visiting the unit that day to bring Plaintiff antifungal cream based on a previous request for medical care.[1] *Id.* at 20. Plaintiff told the nurse about the incident, but he was never taken to the medical unit for an assessment. *Id.* at 20-21. Plaintiff testified that he put in a medical request for jock itch in September 2019, but he did not request treatment for back or side pain because the issue had resolved itself by then. *Id.* at 28.

To state a constitutional claim for denial of adequate medical care, a plaintiff must demonstrate that defendants were deliberately indifferent to plaintiff's serious medical needs, such that it constituted an unnecessary and wanton infliction of pain. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A prison official is not liable for the denial of medical treatment unless the official knows of and disregards an excessive risk to inmate health or safety. *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). The Constitution guarantee prisoners "only

---

[1] Defendants note that there are no medical request forms from the date of the incident relating to Plaintiff's injuries. *See* Doc. [39] at 2 n.1 & Doc. [38-3] at 2.

adequate, not optimal medical care." *Spriggins v. LaRavia*, 2012 WL 1135845, at *4 (E.D. La. Apr. 4, 2012) (emphasis in original), citing *Gobert v. Caldwell*, 463 F.3d 339, 349 (5th Cir. 2006).  An allegation of malpractice or mere negligence is insufficient to state a claim.  *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999).  Moreover, the fact that a prisoner disagrees with the type of medical treatment does not constitute a constitutional deprivation.  *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

Plaintiff admits he was seen by a nurse shortly after the incident.  At most, Plaintiff contends he should have been taken to the medical unit for further evaluation.  He does not explain what additional treatment he should have received or how an evaluation at the medical unit would have been different from the evaluation provided by the nurse shortly after the incident.  Moreover, Plaintiff does not allege that any of the named Defendants failed to provide him with medical care.  The named Defendants are not medical providers.  He alleges that he told an unidentified nurse about the incident; however, he does not name this individual as a party to the lawsuit.  Plaintiff's claim for inadequate medical care fails on the pleadings, because he has not alleged sufficient facts from which to conclude that any of the named Defendants were deliberately indifferent to a serious medical need.

### Grievance Process

Plaintiff contends that Defendants failed to address his grievances.  This claim is without merit.  Plaintiff possesses no constitutional right to a grievance procedure and no due process liberty interest right to have his grievance resolved to his satisfaction.  *See Geiger*, 404 F.3d at 374-75.  Moreover, to the extent that Plaintiff alleges that any of the defendants failed to investigate his grievance adequately, such an allegation does not constitute a claim under § 1983.  *Id.* at 374.

**Excessive Force**

As noted earlier, in their motion for summary judgment, Defendants do not challenge Plaintiff's excessive force claim. *See* Doc. [39] at 7. Accordingly, the Court will set this matter for trial on the excessive force claim alleged against Defendants Jones and Strait.

IT IS THEREFORE ORDERED AND ADJUDGED that Defendants' Motion for Summary Judgment is GRANTED, such that all Plaintiffs' claims against Defendants Captain Brian Watson and Madison County are dismissed with prejudice, and all Plaintiffs' claims against Defendants Jones and Strait are dismissed with prejudice, except for the excessive force claim.

SO ORDERED AND ADJUDGED, this the 17th day of March 2021.


/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE